MR. JUSTICE HUNT,
dissenting:
I dissent. The majority is incorrect when they say that Ridenour is not controlling in this case. Although the majority correctly distinguishes between occupational disease and injury, it fails to realize that this is indeed a case where “an occupational disease [has been] converted to an accident by an unusual and sudden dosage of’ welding dust. Larson, Workmen’s Compensation Law, Vol. IB, Section 41.31. The majority states that Whittington failed to identify an un *126 expected tangible happening that occurred on a specific date. In so stating, the majority ignores key testimony from both the claimant and his wife that the claimant experienced severe difficulty breathing immediately after several shifts working on welding stainless steel. The majority ignored claimant’s testimony that he became nearly housebound immediately after the attack. This is not a case when the claimant has gradually had to give up his activities due to increasing severity of his pulmonary disease. This is a case where the exposure to several days of toxic fumes resulted in such pulmonary distress as to limit the claimant to the confines of his house and yard.
The majority contends that the claimant was not able to fix his injury to a definite time. Yet it is clear that Whittington’s difficulties began directly after his September, 1982, welding shifts. The majority quotes Professor Larson as stating that:
“What set occupational disease apart from accidental injuries was both the fact that they could not honestly be said to be unexpected, since they were recognized as inherent hazard of continued exposure to conditions of the particular employment, and the fact that they were gradual rather than sudden in onset. Thus, what would ordinarily be an occupational disease might be converted to an accident by an unusual and sudden dosage of the same kind of dust or fumes that, absorbed gradually over a long period, would produce typical industrial disease.”
Larson, Workmen’s Compensation Law, Vol. IB Section 41.31, (1987).
Professor Larson has also stated:
“As to suddenness of cause: the tendency has been to recognize episodes or exposures of several hours’ or even several days’ duration, since for all practical purposes, including those mentioned at the outset of this section, identification of the time of accident within a matter of a few days is sufficiently precise ....
“Put negatively, this is merely to say that injury, to be accidental, need not be instantaneous.”
Larson, Workmen’s Compensation Law, Vol. IB, Section 39.20.
Professor Larson also states this about the time definiteness of the result of an accident.
“[I]n various situations an otherwise-gradual kind of deterioration may culminate in an obvious and sudden collapse and structural change whose incidence can fix the date of accident clearly.”
Larson, Vol. IB at Section 39.30.
*127 As an example, Professor Larson mentions that years of inhaling welding fumes that results in a sudden inability to breath satisfies the definition of accident. Id.
Whittington’s pre-existing disease does not preclude Workers’ Compensation for an aggravation or acceleration of the disease by an industrial injury or accident. Ridenour, 665 P.2d at 787-88. This case squarely fits within the Ridenour analysis and claimant should not have been forced to accept a lower compensation award under the Occupational Disease Act.